# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

RADIOLOGICAL IMAGING TECHNOLOGY, INC.

Plaintiff,

v.

NORTHWEST MEDICAL PHYSICS, INC.;
NORTHWEST MEDICAL PHYSICS CENTER,

Defendants.

---

## COMPLAINT

---

Plaintiff, Radiological Imaging Technology, Inc. ("RIT"), by and through its counsel Sherman & Howard, LLC, brings this suit for breach of contract and misappropriation of trade secrets against Defendants Northwest Medical Physics, Inc., and Northwest Medical Physics Center.  RIT alleges as follows:

### **THE PARTIES**

1.      RIT is a corporation organized and existing under the laws of the State of Colorado, with a principal place of business at 637 Elkton Drive, Colorado Springs, Colorado, 80907.

2.      RIT is a leader in the field of radiotherapy dosimetry, and is the owner and seller of RIT 113 Radiation Therapy Dosimetry Software.  RIT's

software is the leading dosimetry software in the United States.  Dosimetry software is used to help calibrate radiation doses when treating cancer patients.

3.      RIT's dosimetry software is used at 48 of the top 50 cancer centers (as listed in the U.S. News and World Report's 2003 Annual Report of top American hospitals).   RIT's software is used at approximately 1500 sites worldwide.

4.      Defendant Northwest Medical Physics, Inc. ("NMPI") is a corporation organized and existing under the laws of the State of Iowa, with its principal place of business at 21031 67th Ave West, Lynnwood, WA 98036.

5.      On information and belief, NMPI does business as Northwest Medical Physics Equipment ("NMPE").  Accordingly, any reference to NMPE is the same as a reference to NMPI.

6.      Defendant Northwest Medical Physics Center ("NMPC") is either an alter ego of NMPE or a separate entity distinct from NMPE.  On information and belief, NMPC purports to be organized as a nonprofit corporation under the laws of the State of Washington.  Like NMPE, NMPC also has its principal place of business at 21031 67th Ave West, Lynnwood, WA 98036.

7.      Defendants are engaged in the business of selling and/or offering for sale throughout the United States certain radiotherapy dosimetry products including their ProCheck software product.  ProCheck is a competitor product to RIT's software.

## JURISDICTION

8.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 because Plaintiff and Defendants are citizens of different states. The amount in controversy in this case exceeds $75,000.

## VENUE

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391.  As discussed in detail below, NMPC entered into a written agreement with RIT which has a mandatory Colorado choice of forum clause.  See Exhibit 1 at section 11 (c)("This agreement and performance hereunder shall be governed exclusively by the laws of the State of Colorado and the federal and state courts of Colorado shall have exclusive jurisdiction over any dispute related to this Agreement").  As described in detail below, NMPE's conduct is closely related to and inextricably intertwined with NMPC's agreement with RIT.

## COUNT I

### (Breach of Written Contract)

### (Against Defendants NMPE and NMPC, As a Single Entity)

10.      RIT realleges the allegations of paragraphs 1-9 as though fully set forth herein.

11.      RIT licenses its dosimetry software pursuant to a written licensing agreement.  See Exhibit 1.  Pursuant to the licensing agreement, the licensee must acknowledge RIT's software license before each use of the software.  In addition, the licensee must accept the terms of RIT's software license when it initially installs the software or installs any update of the software.  Finally, the written sales agreement, signed by the licensee, incorporates the terms of the license by reference.

12.      In 2001, NMPC purchased a version of RIT's software and pursuant to the license agreement executed in connection with that purchase, became a licensed user of RIT's software.  As of the date of this complaint, NMPC is still a licensed user of RIT's software.  NMPC purchased a number of different versions

of RIT's software. Most recently, NMPC purchased version 4.1 of RIT's software which was issued July 15, 2004. A copy of the license for version 4.1 is attached hereto as Exhibit 1.

13.     For each of its customers, RIT maintains a list of contact persons for the customer whom RIT is to contact concerning developments related to RIT's software. Among the list of contact persons for NMPC is Gary Hower. A copy of Gary Hower's biography on NMPC's website is attached hereto as Exhibit 2. Mr. Hower is one of the users of the RIT software that NMPC identified in the sales agreement that it signed with RIT in August 2001. A copy of the quote RIT provided to NMPC on August 15, 2001 is attached hereto as Exhibit 3. A copy of the sales agreement RIT sent to NMPC on August 23, 2001 is attached hereto as Exhibit 4. A signed copy of the sales agreement identifying Mr. Hower as a user is attached hereto as Exhibit 5. In the summer of 2004, RIT was told to identify Mr. Hower as the main user at NMPC of the RIT 113 software. As a result of this direction, RIT changed its customer contact system to identify Mr. Hower as "the physicist in charge of the RIT 113 software." A copy of an email reflecting that in August 2004 RIT changed its customer contact system to reflect Hower as the main contact for NMPC is attached hereto as Exhibit 6.

14.     On or about March 16, 2006, RIT contacted Mr. Hower to inquire as to what problems, if any, NMPC had with RIT's software. Hower reported that RIT's software was working well. Hower also reported that NMPC only uses RIT's software for calibration of radiation doses.

15.     Indeed, on its website, NMPC indicates that it uses RIT 113 software when film is sent to it for dosimetry services. A copy of this page from NMPC's website is attached hereto as Exhibit 7.

16.     At the time of this call, Mr. Hower was also and continues to be an employee, the chief medical physicist, of NMPE, a subsidiary of MED-TEC.   On MED-TEC's website, Mr. Hower's listed phone and fax number is the same as Defendant NMPC.  A copy of this page from MED-TECs website is attached hereto as Exhibit 8.

17.     The license for version 4.1 of RIT's software provides, in relevant part at section 1(g), that the licensee shall not "independently create software applications that perform substantially the same functions as [RIT's] software." See Exhibit 1 at page 2.

18.     The primary purpose of the licensing restriction prohibiting development of a competing product is the protection of RIT's trade secrets from its competitors.

19.     Defendant NMPE first began marketing its product ProCheck in 2003, less than two years after NMPC acquired its first license for RIT's software. ProCheck is a software application that performs substantially the same functions as RIT's software and therefore violates section 1(g) of the software agreement. In short, ProCheck is a competing software.

20.     Although the license is formally in NMPC's name, on information and belief, NMPC and NMPE are alter egos of each other.

21.     On its website, NMPE, lists its address as 21031 67th Ave, Lynnwood, WA 98036 and its phone number as (425) 672-2841 and its fax number as (425) 672-8470.   A copy of the page of NMPE webpage which lists its contact information is attached hereto as Exhibit 9.

22.     On its website, NMPC lists its address as 21031 67th Ave, Lynnwood, WA 98036 and its phone number as (425) 672-2841 and its fax

number as (425) 672-8470.  This is the same address, phone number and fax number as NMPE.  And NMPC is at the same address as the registered agent for NMPE.   A copy of the page of the NMPC webpage which lists its contact information is attached hereto as Exhibit 10.

23.     Furthermore, one of the users of the RIT software at NMPC, Gary Hower, is also the head medical physicist for Defendant NMPE, a MED-TEC subsidiary.  On the MED-TEC website, Hower uses the same phone number and fax number as NMPC and NMPE.

24.     In 2004, RIT filed a separate litigation involving a dispute over RIT's patents with NMPE and its parent corporation, MED-TEC, Inc.   In that litigation, in response to RIT's document requests, MED-TEC, Inc. and defendant NMPE produced as their own academic papers authored by medical physicists at NMPC, as well as a 1991 letter from a governmental agency to the founder of NMPC at NMPC's present address in Lynnwood, Washington.   A copy of these documents are attached hereto as Exhibit 11.

25.     Furthermore, the technical support number for ProCheck, listed on all of the ProCheck user manuals, is (425) 672-2841. Pages from the user manual listing the number to call for technical support is attached as Exhibit 12.  This is the same office number that is used by NMPC.

26.     When one calls NMPC's number, (425) 672-2841, after-hours and reaches the answering machine, the caller gets a message that does nothing to suggest that NMPE, NMPE and NMPC are separate entities.  The message only states that you have reached "Northwest Medical Physics" and then goes on to list extensions for individuals such as Andrew Jones, who have been publicly identified as working for NMPE, and others such as Ann Jones, who on the NMPC

website is identified as a worker for NMPC.  Attached as Exhibit 13 hereto are public documents regarding Andrew Jones' and Ann Jones's purported affiliations with NMPE and NMPC, respectively.

27.     Defendants NMPC and NMPE have violated section 1(g) of the RIT software license by developing and selling ProCheck software.

28.     As a result of this breach of contract, RIT has lost a number of sales to NMPC and NMPE.

29.     The losses for these sales are well in excess of $75,000.

## COUNT II

### (Breach of contract)

### (Against NMPC, Only, As a Distinct Entity)

30.     RIT realleges the allegations of paragraphs 1-29 as though fully set forth herein.

31.     In the alternative, if NMPE and NMPC are not the alter egos of the other, they are separate, distinct entities.

32.     The license for version 4.1 of RIT's software provides, in relevant part at section 1(e) that the licensee shall not "Permit any third party to use the Software in any manner."   See Exhibit 1 at page 2.

33.     In the patent litigation with NMPE and its parent corporation MED-TEC, believing that NMPC and NMPE were the same company, on March 17, 2006, RIT objected to the production of its software as part of discovery in part on the grounds that MED-TEC and NMPE had already obtained its software.   In response, on March 27, 2006, counsel for Defendants MED-TEC and NMPE did not deny having RIT's software and instead stated that it was entitled to the

software "regardless of whether or not Med-Tec had obtained a copy of RIT's software independently."

34.     As stated above, one of the users of the RIT software at NMPC, Gary Hower, is  the head medical physicist for Defendant NMPE, which manufactures ProCheck, a software product strikingly similar to RIT's software. NMPE began marketing its ProCheck software two years after NMPC first obtained a license for RIT's software. The ProCheck software contains numerous features substantially similar to RIT's software.

35.     Defendant NMPC has violated section 1(e) of the RIT software license by transferring the software, or providing access to the software, or some portion of it, to NMPE.

36.     As a result of this breach of contract, RIT has lost a number of sales to NMPE.

37.     The losses for these sales are well in excess of $75,000.

## COUNT III

### (Misappropriation Of Trade Secrets)

### (Against NMPE Only, As a Distinct Entity)

38.     RIT realleges the allegations of paragraphs 1-37 as though fully set forth herein.

39.     In the alternative, if NMPE and NMPC are not the alter egos of the other, they are separate, distinct entities.

40.     RIT's software is a proprietary technical invention of RIT many aspects of which are confidential to RIT and its licensees.  To its knowledge, other than with respect to NMPE, the confidential aspects of RIT's software are and remain trade secrets, known only to it and its licensed users.  RIT maintains and

ensures the confidential nature of the secret aspects of its software by taking the following protective steps, among other things:

        a.     RIT requires each licensee to agree to maintain the confidentiality and secrecy of the software and related documentation. Specifically, paragraph 3 of the License Agreement provides as follows:

> 3. Copies:  The license(s) granted herein include(s) the right to copy the Software in non-printed, machine readable form in whole or in part as necessary for User's own reasonable back-up safety needs. In order to protect RIT's trade secret, copyrights, and other intellectual property rights in the Software, User agrees to reproduce and incorporate the phrase "Intellectual Property of RIT" in addition to RIT's trade secret or copyright notice in any copies, modifications or partial copies of the Software, User's Manuals, or Tutorials.

Paragraph 4 of the license agreement provides:

> Information concerning RIT's algorithms, RIT's methodology, RIT's non-use of algorithms, RIT's displays or user interface are confidential trade secret information and must not be disclosed to others. User agrees to secure and protect each module, software product, documentation and copies thereof in a manner consistent with the maintenance of RIT's rights therein and to take appropriate action by instruction or agreement with its employees or consultants who are permitted access to each program or software product to satisfy its obligations hereunder. Violation of any provision of this paragraph shall be the basis for immediate termination of this License Agreement.

        b.     RIT encrypts its software to prevent users and third parties from accessing the source code in the software.  RIT's software also contains an encryption key tool in the software itself.  When the licensee installs the software, the software identifies the features of the computer on which it is installed,

communicates with RIT and RIT then sends a key to the licensee that permits the licensee to activate the software. This prevents unauthorized copying.

        c.     RIT requires all of its employees to sign confidentiality agreements requiring them to maintain the confidentiality of RIT's software and related documentation.

        d.     RIT adheres to a strict written policy of not licensing its software to any entity that markets a competing software product to prevent competitors from learning any aspect of RIT's trade secrets. Indeed, RIT's software license prohibits any licensee from developing or marketing such software. RIT carries out this policy by maintaining a list of its competitors and checking it against proposed new licensees prior to issuing any new license for its software.

        e.     RIT's software comes with a written user's guide. Every page of the user's guide is labeled at the bottom with the footer "RIT confidential." Moreover, RIT's technical support website is accessible only by licensees using a confidential name and password. Finally, all licensees are invited to a training session at RIT. During this training session, the presenter reminds the users that RIT's software and related written materials constitute confidential trade secrets and that they are obligated to maintain the confidentiality of that information.

        f.     RIT has previously successfully enforced its licensees' obligations to maintain the confidentiality of the trade secret content of its software and related materials through the issuance of cease and desist letters.

        41.     RIT first licensed the software to NMPC in 2001. At that time or sometime thereafter, at least one employee of NMPC became involved in and

employed by NMPE. That same employee had access to and use of the software issued to NMPC. Sometime thereafter, counsel for NMPE admitted (by failing to deny RIT's allegation) that it had in its possession RIT's software. NMPE's employees knew that the software was licensed to NMPC only and that NMPC and its employees were obligated under the license agreement to maintain the secrecy of the software and not to transfer it or provide access to any third party.

42.     NMPE, through the actions of its employees and agents, including Mr. Hower, misappropriated RIT's trade secrets.

43.     As a result of NMPE's actions, RIT has lost a number of sales to NMPE.

44.     The losses for these sales are well in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, RIT prays for the following relief:

a.     A permanent injunction prohibiting Defendants from making, using, selling, and offering for sale ProCheck;

b.     Damages in an amount that is yet to be ascertained for the past sales of ProCheck;

c.     RIT's attorneys' fees and costs;

d.     On the Third Count only, actual and punitive damages;

e.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Rit hereby demands a trial by jury on all issues triable of right by a jury.

Respectfully submitted, April 12, 2006

Respectfully submitted,


s/ Terence C. Gill
Terence C. Gill
SHERMAN & HOWARD, L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado, 80202
Telephone:  (303) 297-2900
Facsimile:   (303) 298-0940
tgill@sah.com


s/ Kerry A. Macleod
Kerry A. Macleod
SHERMAN & HOWARD, L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado, 80202
Telephone:  (303) 297-2900
Facsimile:   (303) 298-0940
KMacleod@sah.com

**Attorneys For Plaintiff**
**Radiological Imaging Technology, Inc.**

Plaintiff's Address:

637 Elkton Drive
Colorado Springs
Colorado, 80907